Frances Gray Merkel v. Commissioner. Ann Gray Sherer v. Commissioner. Joseph S. Sherer, Jr., and Ann Gray Sherer v. Commissioner.
Merkel v. Commissioner
Docket Nos. 39460-39462.
United States Tax Court
T.C. Memo 1954-82; 1954 Tax Ct. Memo LEXIS 153; 13 T.C.M. (CCH) 595; T.C.M. (RIA) 54187; June 30, 1954, Filed *153 Russell A. McNair, Esq., for the petitioners. Peter K. Nevitt, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioners for the years and in the amounts as follows: Docket
No.
Year
Deficiency
Frances Gray Merkel
39460
1948
$315.02
1949
429.23
Ann Gray Sherer
39461
1948
327.68
Joseph S. Sherer, Jr.,
and Ann Gray Sherer
39462
1949
472.78
The only question for determination is whether the petitioners realized income in 1948 and 1949 on account of distributions received in those years with respect to an assessment paid on bank stock by a trust of which they were distributees of corpus. Findings of Fact A portion of the facts have been stipulated and are found accordingly. Joseph S. Sherer, Jr., and Ann Gray Sherer are husband and wife and filed a joint income tax return for 1949. The income tax returns of all petitioners for 1948 and 1949 were filed with the collector for the district of Michigan. Paul R. Gray died testate and a resident of Detroit, Michigan, on September 27, 1929. Surviving him was his *154 widow, Frances Noble Gray, and their three daughters, Elizabeth Gray Sackett, Frances Gray Merkel and Ann Gray Sherer. The latter two, petitioners herein, are sometimes hereinafter referred to as the petitioners. The will of Paul R. Gray, sometimes hereinafter referred to as the decedent, was probated in the Wayne County (Michigan) Probate Court on November 1, 1929. Luman W. Goodenough named in the will as executor, and as trustee of the several trusts created by the will, qualified and was appointed as such executor and as trustee. Of the several trusts created by the will of the decedent, one was for the widow, Frances Noble Gray, and sometimes hereinafter referred to as the widow's trust. To this trust the decedent left one-third of his residuary estate to be held in trust during the life of the widow with the income therefrom to be paid to her monthly and at her death the principal or corpus to be distributed as the laws of Michigan provide. The trustee was empowered to make investments and re-investments of trust funds. Goodenough served as trustee of the several trusts, including the widow's trust, until about the end of June 1939 when he resigned and Irvin Long and Mack *155 Ryan were appointed as successor trustees. Frances Noble Gray died on February 21, 1945, and the trust held for her benefit terminated on that date. Thereafter, by order dated August 23, 1945, the Wayne County (Michigan) Probate Court determined that her daughters, Elizabeth Gray Sackett, Frances Gray Merkel and Ann Gray Sherer, were entitled to the principal or corpus of the trust, ordered the trustees to distribute the corpus to them in equal shares and decreed that, upon the filing of appropriate receipts for such distributions and the filing of satisfactory evidence of the payment of certain tax liabilities to the State of Michigan, the trustees were to be discharged. Subsequently, the trustees distributed the trust corpus as ordered by the probate court. At the time of his death Paul R. Gray owned, among others, the following assets which were reported by the executor at the indicated amounts for Federal estate tax purposes: 700 shares of stock in
Bank of Michigan
$126,000
94 shares of stock in
Detroit Security and Trust Co.
206,800
20 shares of stock in
First National Bank-Detroit
21,700
Total
$354,500 In determining the liability of the decedent's *156 estate for Federal estate tax, the respondent determined that the foregoing shares of stock had a total value of $357,650 on the date of death of the decedent. In a letter dated October 5, 1929, addressed to the stockholders of Bank of Michigan, Detroit Security and Trust Co., First National Bank-Detroit, Peoples Wayne County Bank and Peninsular State Bank, a plan was proposed for the merger of these banks by an exchange of stock in each of them for stock in a holding company to be known as Detroit Bankers Company, in ratios varying with each bank. In conformity with the proposal the executor of the decedent's estate exchanged the above-mentioned shares of bank stock held in the estate for 1,554 shares of stock in Detroit Bankers Company, sometimes hereinafter referred to as Detroit Bankers, and a script certificate for 32/100 of a share. The script certificate was sold immediately. On November 23, 1932, and upon completion of the administration of the decedent's estate, the trust for the widow was set up. In accordance with the terms of the decedent's will, one-third of the assets of his estate, including one-third of the 1,554 shares of stock in Detroit Bankers, or 518 shares, *157 were placed in that trust. At that time the trustee valued the Detroit Bankers stock at $15 a share. Prior to 1933 Detroit Bankers acquired all of the capital stock, except qualifying directors' shares, of First National Bank in Detroit, sometimes hereinafter referred to as First National. Pursuant to order of the Comptroller of the Currency, First National was closed in February 1933. It did not thereafter reopen for business. On May 16, 1933, the Comptroller of the Currency made a 100 per cent assessment upon the shareholders of First National amounting to $25,000,000, payable to the bank's receiver and the receiver in turn proceeded to enforce the same against the stockholders of Detroit Bankers on the theory that they were the true and beneficial owners of the stock of First National. After extensive litigation by certain stockholders of Detroit Bankers, it was determined in Barbour v. Thomas, 7 Fed. Supp. 271., affd; 86 Fed. (2d) 510; certiorari denied, 300 U.S. 670, that the assessment was valid, that the stockholders of Detroit Bankers were individually liable for their proportionate share of the assessment, and that such liability was *158 $14,055775 per share of Detroit Bankers stock. The amount of the assessment due from the widow's trust with respect to the 518 shares of stock of Detroit Bankers held therein was $7,280.89. On April 6, 1934, that amount was paid from the corpus or principal of her trust. In the income tax return of the widow's trust for 1933, a deduction of $7,770 was taken as a loss sustained on account of the 518 shares of Detroit Bankers stock held in her trust, having become worthless during the year. In the return of her trust for 1934, a deduction of $7,280.89 was taken as a loss sustained on the payment of the portion of the assessment applicable to said 518 shares of Detroit Bankers stock. In each instance the deduction taken was smaller than the net loss otherwise disclosed by the return, and no tax benefit was obtained from the deduction. In the latter part of 1942, a plan for liquidating the then remaining assets of First National, through the medium of a corporation designated First Liquidating Corporation, was put into effect, and the ultimate liquidation of such assets was carried out in accordance with that plan. The sole purpose for the creation of the First Liquidating Corporation *159 was to acquire the above-mentioned assets of First National from the receiver of that bank and liquidate them in accordance with the plan of liquidation without pecuniary gain or profit or income to First Liquidating Corporation or its stockholders. After providing for the repayments of all loans and other sums obtained for financing the purchase and liquidation of the assets, the plan provided that any remaining proceeds of liquidation should be distributed in the following order: (1) To the persons who made payment to the receiver of First National on account of assessments on the stock of that bank, ratably in proportion to the amount paid by each such person on the principal of such assessment, without interest, and (2) any surplus remaining after the foregoing should be distributed among the stockholders of First National. After payment in full of all prior amounts required to be paid by the plan of liquidation, First Liquidating Corporation during 1948 and 1949 made certain pro rata distributions out of the proceeds of liquidation of the assets acquired from the receiver of First National with respect to the assessments that had been paid on the stock of First National. The *160 distributions made in those years with respect to the 518 shares of Detroit Bankers stock which formerly had been held in the widow's trust amounted to 61 per cent of the amount of the assessment paid by the trust in 1934, the distribution in 1948 amounting to 25 per cent of such assessment payment, and that in 1949 amounting to 36 per cent. The successor trustees, Irvin Long and Mack Ryan, who were serving as trustees of the widow's trust when it was terminated by the death of the widow, filed proof of claim with respect to the assessment paid on account of the 518 shares of Detroit Bankers stock which formerly had been held in the trust. Consequently, the abovementioned distributions with respect to said shares were paid by First Liquidating Corporation to them. They in turn made distribution of a one-third portion thereof to each, Frances Gray Merkel and Ann Gray Sherer. The amounts so received by the trustees and so distributed by them to the distributee petitioners herein during 1948 and 1949 were as follows: Received
Distributed to
by
Frances
Ann Gray
Year
trustees
Gray Merkel
Sherer
1948
$1,820.22
$606.74
$606.74
1949
2,621.12
873.71
873.70
*161 Neither Frances Gray Merkel nor Ann Gray Sherer reported as income in her income tax returns for the respective years any portion of the above amounts so distributed to her. In determining the deficiencies here involved the respondent determined that the amounts distributed to them in the respective years constituted ordinary income. Opinion The petitioners take the position that as remainder beneficiaries of the widow's trust the basis of their rights to receive the distributions in question was the same as the basis such rights had in the hands of the trust; that after the receipt of the last of the distributions in 1949 the basis of their rights had not been fully recovered; and that, therefore, the distributions in their hands represented a return of capital and not income as the respondent determined. Although conceding that remainder beneficiaries of a trust acquire the trust's basis for property received from the trust, the respondent takes the position that the basis to the widow's trust for the right to receive the distributions in question was zero, that, consequently, the basis of the rights to the petitioners was zero, and that, accordingly, his determination that *162 the distributions in question were ordinary income to the petitioners should be sustained. The decedent, Paul R. Gray, died owning certain bank stocks which the respondent, in determining the estate tax liability of the decedent's estate, determined had a total value of $357,650 on the date of decedent's death. The value so determined was the basis of those stocks in the hands of the estate. Section 113(a)(5) of the Internal Revenue Code. While the shares were held in decedent's estate, they were exchanged for 1,554 shares, plus a small fractional portion of a share, of stock in Detroit Bankers. No contention is made that any gain or loss was recognizable on the exchange and, so far as appears, none was realized thereon. As a consequence, the 1,554 shares of stock in Detroit Bankers had a basis of approximately $357,650 in the hands of the estate, or approximately $230 per share. In 1932, and upon completion of administration of the decedent's estate, one-third of the 1,554 shares, or 518 shares, were placed in the widow's trust where they continued to have a basis of approximately $230 a share. During 1934, and while the 518 shares of Detroit Bankers stock *163 were held in the widow's trust, an assessment of $14.055775 per share was paid by the trust out of corpus with respect to the assessment on First National stock. While it is true that the widow's trust took a deduction in its 1933 income tax return for a loss sustained in that year on account of the 518 shares of Detroit Bankers stock having become worthless and took a deduction in its 1934 return as a loss resulting from the payment of the assessment on the First National stock, it is also true that the trust derived no tax benefit from either of the deductions. Since the widow's trust derived no tax benefit from either of the deductions, under the holdings in the Estate of Fred T. Murphy, Deceased, 22 T.C. 242, (filed May 6, 1954), involving assessments paid by other stockholders of Detroit Bankers with respect to First National stock, the trust's basis for the 518 shares of Detroit Bankers stock was increased by the amount of the assessment paid on First National stock. The basis was thus increased from approximately $230 per share to approximately $244 per share. As conceded by the respondent, the petitioners as remainder beneficiaries of the widow's trust took their *164 one-third portions of the 518 shares of Detroit Bankers stock with the same basis as the shares had in the trust. Since the basis to the trust was approximately $244 per share, the stock had a like basis in the hands of the petitioners, and they were entitled to receive distributions in that amount per share before realizing taxable income. The record herein is silent as to what distributions, if any, were received by petitioners from First Liquidating Corporation during any year other than 1948 and 1949. The distributions in 1948 and 1949 totaled 61 per cent of the amount of the assessment paid. Certain statements contained in the brief of the petitioners indicate that, upon a final liquidation of the affairs of First Liquidating Corporation in 1949, total distributions amounted to only about 85 per cent of the assessment paid. This indicates that a distribution or distributions were made during some year or years other than 1948 and 1949. In this situation, and since the respondent makes no contention that at the end of either 1948 or 1949 the petitioners had received distributions in excess of the basis per share of their stock, $244, or even approximating that amount, we conclude *165 that the distributions received by petitioners during the years in question did not constitute income to them. Decisions will be entered under Rule 50.